Matter of Lulu J.S. v Rahmel H.H. (2025 NY Slip Op 03546)

Matter of Lulu J.S. v Rahmel H.H.

2025 NY Slip Op 03546

Decided on June 10, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 10, 2025

Before: Manzanet-Daniels, J.P., Friedman, Scarpulla, Shulman, Rosado, JJ. 

Case No. 2024-04581|Docket No. V-19070-13/16, V-18877-13/16, V-18877-13/16|Appeal No. 4549|Case No. 2024-04581|

[*1]In the Matter of Lulu J.S., Petitioner-Respondent,
v
Rahmel H.H., Respondent-Appellant. 

Heath J. Goldstein, Jamaica, for appellant.
Larry S. Bachner, New York, for respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Diane Pazar of counsel), attorney for the child.

Order, Family Court, Bronx County (Ashley B. Black, J.), entered on or about July 9, 2024, which, after a fact-finding hearing, granted petitioner mother's petition to modify a prior final custody order by granting her sole legal and physical custody of the subject child with limited supervised therapeutic visitation to respondent father, unanimously affirmed, without costs.
Family Court's determination that it was in the best interests of the child to modify the custody arrangement and grant sole legal and physical custody to the mother has a sound and substantial basis in the record (see Eschbach v Eschbach, 56 NY2d 167, 172-173 [1982]). Indeed, since the entry of the prior custody order in 2013, significant changes in circumstances occurred. Namely, on November 25, 2019, a finding of neglect was issued against the father for excessive corporal punishment of the subject child, after which the child was released to the mother's care. Concomitantly, an order of protection was issued against the father on behalf of the child, which did not include a carveout for visitation between the father and child. Furthermore, the court properly took judicial notice of and considered these matters in reaching its determination to modify the custody arrangement (see Matter of Gabriel J. [Dainee A.], 100 AD3d 572, 572-573 [1st Dept 2012]). The hearing evidence demonstrated that, although the 2013 custody order provided for equal parenting time, the parties never strictly adhered to the schedule, with the child primarily residing with the mother. Since the time the mother filed for a modification, she had taken full responsibility for his education, beginning with kindergarten, when he first came into her exclusive care. By the time of her hearing testimony, the child was preparing to enter middle school. The mother was responsible for initiating the child's evaluation for an IEP and enrolling him in activities aligned with his interests. In addition, the mother managed his medical care, including seeking an ADHD evaluation and ensuring proper medication management. The court properly considered these factors—and the overall stability they provided in the child's life in determining that it was in the child's best interests to modify the custody arrangement (see Matter of Alexis A.T. v Gary C.T., 204 AD3d 555, 555-556 [1st Dept 2022]).
The record further demonstrated that—despite the court's finding of the father's history of domestic violence against the mother,[FN1] which would, as the court noted, make "any joint custodial arrangement unworkable"—the mother has made demonstrable efforts to foster a relationship between the father and the child, while also taking care to consider the child's comfort (see Matter of Joane H. v Felix P., 160 AD3d 552 [1st Dept 2018]). She consistently encouraged the child to attend supervised visits with his father, even though the child expressed a desire for the visits to cease. Additionally, the mother enrolled the child in therapy [*2]to help him process the trauma related to his experiences with the father. The court noted that while the mother indicated that she was willing to facilitate the child's relationship with the father (see id.), the father, contrastingly, was "adamant regarding his distaste" for the mother and made clear his desire to sever ties between her and the child (see Matter of Parrish P. v. Camille G., 140 AD3d 586, 587 [1st Dept 2016]).
Family Court's determination that joint custody was inappropriate in this case is further supported by the father's history of domestic violence perpetrated against the mother and the child, the extensive litigation, and the father's inability to communicate with the mother effectively regarding the child (see Matter of Deserie D.G. v Jonathan C., 184 AD3d 538, 539 [1st Dept 2020]). The court properly balanced these issues in arriving at its decision (id.).
Family Court's determination that supervised therapeutic visitation with the father four times a year is in the best interests of the child has a sound and substantial basis in the record and should not be disturbed (see Matter of Arcenia K. v Lamiek C., 144 AD3d 610, 610 [1st Dept 2016]). The court properly took judicial notice of two prior orders finding that the father had neglected the subject child and three other children in his care by using excessive corporal punishment, as well as his manslaughter conviction related to the death of his infant son. Indeed, the court noted the father's lack of insight into how his past behavior may have impacted his relationship with the subject child and caused trauma, as well as the safety risks present if the child were to be unsupervised around him. The court also considered testimony indicating that, despite several years of the father's supervised visitation with the child, the visits never progressed beyond 5 to 10 minutes in duration. This evidence provides a sound and substantial basis for the court's finding that unsupervised visitation would have a negative impact on the child's well-being (see Matter of Sean B. v Erica C., 175 AD3d 1193 [1st Dept 2019]). The court appropriately considered the then-12-year-old child's position taken during an in camera interview and accorded it due weight (see Matter of Ivan J. v Felicia V., 228 AD3d 506, 506-507 [1st Dept 2024]).
We reject the father's assertion that he should not bear the costs of visitation. The mother credibly testified that she has been solely responsible for all of the child's expenses and has received no support from the father. Under these circumstances, requiring the father to cover the cost of visitation, which represents his only financial contribution to his son's care, is entirely reasonable. 

 
 THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
 
 
ENTERED: June 10, 2025

Footnotes

Footnote 1: The court also properly took judicial notice of a final order of protection (FOP) issued on April 26, 2022 on behalf of the mother against the father, which expires on April 25, 2027. The issuance of the FOP followed a trial on a family offense petition filed against the father, after which the court found that the father engaged in family offenses against the mother, including harassment in the second degree, criminal obstruction of breathing or blood circulation, strangulation in the second degree, assault in the third degree, and menacing in the third degree.